534 So.2d 856 (1988)
Lucy MANIGAULT, Appellant,
v.
STATE of Florida, Appellee.
No. 88-640.
District Court of Appeal of Florida, First District.
December 5, 1988.
Jefferson W. Morrow, of David, Morrow & Fernande, Jacksonville, for appellant.
*857 Robert A. Butterworth, Atty. Gen., Richard E. Doran, Bureau Chief, Dept. of Legal Affairs, for appellee.
WENTWORTH, Judge.
Appellant seeks review of orders by which her probation was revoked and a sentence imposed for obtaining property in return for a worthless check. We find that the evidence established appellant's violation of her probation, and we conclude that the court was not required to postpone sentencing. We therefore affirm the orders appealed.
After being placed on probation for a worthless check offense appellant was arrested for a subsequent armed robbery. An affidavit was filed alleging that appellant had violated her probation by her participation in the armed robbery. A hearing was held and a robbery detective with the sheriff's office testified that appellant was arrested for the armed robbery pursuant to an arrest warrant. Indicating that he prepared the application for the warrant, the officer stated that the robbery victim had made a police report describing the offense and identifying appellant, who was known to the victim. Appellant did not cross-examine the officer and neither denied her involvement in the offense nor presented any other evidence in this regard.
The court found that appellant's participation in the armed robbery constituted a violation of her probation. Appellant asserts that the evidence was insufficient to establish this offense. Probation may not be revoked merely because a probationer has been arrested for another offense, nor may revocation be based solely upon hearsay. See Purvis v. State, 397 So.2d 746 (Fla. 5th DCA 1981). However, the evidence in the present case is not limited merely to the fact of appellant's arrest. Rather, the testimony detailed the circumstances of appellant's involvement in the armed robbery. And while the evidence was largely hearsay, appellant did not dispute this occurrence through cross-examination, direct evidence, or otherwise.[1] Furthermore, appellant was arrested pursuant to a warrant which was presumably based upon probable cause. The evidence presented in this case was sufficient to permit a finding that appellant violated the terms of her probation by committing an armed robbery.
After the court indicated that it would revoke appellant's probation, counsel for appellant requested that sentencing be postponed. Counsel expressed a desire to further investigate appellant's background and possibly procure witnesses. The court declined to delay sentencing, but allowed appellant the opportunity to present any matter which she wished to offer in mitigation. Appellant made statements in her own behalf, but did not present any other witnesses.
Florida Rule of Criminal Procedure 3.720(b) directs the court to entertain a party's "submissions and evidence" at sentencing. The court adhered to this directive in the present case by affording appellant the opportunity to present matters in mitigation. The decision as to whether sentencing should be further delayed is a matter within the court's discretion. See Miller v. State, 435 So.2d 258 (Fla. 3d DCA 1983). Appellant has not shown an abuse of discretion, and the court was entitled to impose sentence without further delay.
The orders appealed are affirmed.
ERVIN, J., concurs.
ZEHMER, J., dissents w/written opinion.
ZEHMER, Judge (dissenting).
Lucy Manigault raises two points on this appeal from orders revoking her probation *858 and sentencing her to incarceration for 24 months. First, she contends that it was error to revoke her probation based solely upon hearsay testimony of her participation in a robbery. Second, she argues that the court erred in denying her counsel's request for a delayed sentencing hearing. Since I conclude that the trial court erred in both respects, I must respectfully dissent.
Lucy Manigault was placed on probation after pleading guilty to a charge of obtaining property with a worthless check. The matter now before us was initiated by an affidavit of violation of probation alleging that: (1) Manigault had violated condition 1 of her probation in that she was consistently late in submitting the required reports for the months of August, September, October, and November of 1987; (2) she violated condition 5 of her probation requiring her to remain at liberty without violating any law in that she had been arrested and charged with one count of armed robbery; (3) she violated special condition 9 of her probation in that she had failed to make the required payments on the restitution ordered; (4) she had violated special condition 10 of her probation in that she had violated instructions of her probation officer to make payments of $25 per month toward this obligation; and (5) she violated special condition 11 of her probation, which required payment of restitution and the court costs "at a minimum rate of $110 per month." The affidavit, signed by David Delifus, Manigault's probation officer, was not made upon personal knowledge as to all of the allegations of fact.
At the probation revocation hearing, David Delifus testified for the state that Manigault was late in submitting four written monthly reports for August, September, October, and November of 1987, and that she had failed to pay more than $50 toward the court-ordered restitution and court costs. He also said that recently she had been arrested. In response to the prosecutor's question regarding her ability to pay, he replied that "she did encounter some problems with employment and the fact that she did have four minor children at home, she managed to sporadically maintain employment driving a school bus." (Tr. 6-7.) Cross-examination of this officer revealed that he could not remember the details of the charges without his field book, which was apparently not available to him at the time, and that most of the information of which he had knowledge came from that book and other reports.
The state next called Ross T. Weeks, a robbery detective with the Jacksonville Sheriff's Office. Mr. Weeks testified that he arrested Manigault pursuant to an arrest warrant on a charge of robbery. He obtained the warrant based upon a police report made by the victims. That report was not filed with him personally. Despite appellant's hearsay objections, the police officer was permitted to describe in detail the contents of that report, and the written report was not marked and received in evidence. The state rested on this showing.
Lucy Manigault was called by her counsel to testify, but before the court permitted her to answer any questions, he made the following inquiry and statement:
THE COURT: Ms. Manigault, before Mr. Morrow asks you any questions, I want to inform you on the record, I don't know if he already told you this, but you do have a right to remain silent. You do not have to testify unless you wish to. If you choose not to testify, that will not be used against you in any way. Do you understand?
THE DEFENDANT: Yes, sir.
THE COURT: If you decide to stop answering questions at any time, you may do that.
THE DEFENDANT: Yes, sir.
(Tr. 15). Manigault then testified that because she did not have transportation available, she was late getting the reports filed, and further that although she had been sporadically employed, she was not making any money at the time, and was supporting four minor children plus a grandbaby and another grandbaby on the way. She testified she did not have any assets or money. On cross-examination by the state, she was asked about the probation officer talking with her concerning the filing of late reports *859 and explained that she would call his office at times, but he wasn't in so she left messages for him. The state prosecutor also asked about income she used to support her children, and she admitted that she had been a school bus driver for a while and also worked as a waitress at a restaurant at the time she was arrested.
That concluded the presentation of all evidence heard by the court on revocation of probation. The transcript of testimony totals 15 pages.
Appellant's counsel argued that Manigault had not willfully filed reports late, but had given reasonable explanations for doing so, and argued that she had no financial means to pay the restitution and court costs as ordered. He also pointed out that revocation of probation for committing the offense of robbery could not be predicated entirely upon hearsay testimony and that the state had not presented any evidence of the commission of that offense that did not constitute hearsay. The state argued that "as far as the arrest is concerned, the affidavit alleges that she was arrested. She was arrested, it was done on probable cause and the obtainment of an arrest warrant. So it's a valid arrest." (Tr. 20).
The trial court then found appellant guilty of violating probation, stating for the record as follows:
THE COURT: Well, I don't see any evidence before me that refutes the State's contention that she was arrested for armed robbery on the basis of probable cause. And, at that point, it doesn't much matter whether she was willfully in violation on the lateness or not.
For purposes of setting the record straight, her  in my opinion, someone that's on probation and having problems meeting their obligations financially under the probation order that they are required to follow, has no business taking care of four godchildren. Those children should have either been turned over to their real parents, or else sent somewhere for someone to take care of besides her. For her to come in and say, "I can't meet my obligation under the probation order because I'm taking care of other people's children," is the same to me as her saying, "I couldn't meet them because I went to the movies." That's not her obligation.
I also wonder when she started trying to find a ride to go down there, If you wait until the day that's the last day to file, you are going to have problems.
But, all of that really doesn't matter, because she was arrested on probable cause from the armed robbery.
I do find Ms. Manigault to be in violation of probation, and would revoke the probationary sentence previously imposed.
(Tr. 23, 24).
The written order of record revoking probation incorrectly recites that the defendant admitted the violation of probation, rather than reciting that she requested and was granted a hearing. While no point is made of this on appeal, the record should be corrected upon remand.
It is perfectly clear to me that the trial court based revocation of probation on several misconceptions of the evidence and the law. First of all, the court condemned Lucy Manigault for taking care of four "godchildren"; yet there is no testimony that these were godchildren. The testimony referred to them as her children and grandchildren. Who is to say whether the trial judge would have revoked this probation for nonpayment of restitution and costs if he had understood she needed money to support her own children and grandchildren.[1]
Secondly, and more importantly, it seems abundantly clear that the trial judge was convinced that he could find a violation of probation purely on the basis of a valid arrest on probable cause for armed robbery, without regard to any proof of the elements showing the probationer committed the robbery as charged. But to establish a violation of the condition that one not *860 violate the law, absent a conviction on that offense, the state must prove each element of the offense charged. The court's opinion in this case recognizes quite correctly that probation may not be revoked merely because a probationer has been arrested for another offense, and that revocation of probation may not be based merely upon hearsay, citing Purvis v. State, 397 So.2d 746 (Fla. 5th DCA 1981), appeal after remand, 420 So.2d 389 (Fla. 5th DCA 1982). After reviewing this record carefully, however, I am unable to agree with the court's conclusion that the evidence of violation of this condition of probation by committing the armed robbery is supported by anything other than hearsay testimony. Moreover, it is abundantly clear that the trial judge revoked probation solely upon his finding that appellant had been validly arrested on the robbery charge, without making any determination that she in fact committed that offense based upon non-hearsay evidence. I can find no material difference between this case and Brown v. State, 338 So.2d 573 (Fla. 2d DCA 1976), in which the court reversed the revocation of probation on an almost identical fact situation.
The court's opinion relies upon State v. Mangam, 343 So.2d 599 (Fla. 1977), as authority for the conclusion that the record supports the revocation in this instance. That case is cited for the proposition that appellant did not dispute the occurrence of the robbery in her testimony and therefore the court was permitted to conclude that her silence or other manifested objection to the state's evidence could serve as confirmation of the violation charged. This court errs in doing so for several reasons. First, appellant repeatedly objected to the admission of the hearsay testimony concerning the robbery offense. Such objections served to indicate her disagreement with the probative value of such testimony, thus precluding any inference that her silence amounted to an admission of guilt. Second, the application in this case of the proposition stated would be grossly unfair, because the trial judge very clearly impressed upon Manigault that she had no obligation to testify, that if she chose not to do so it would not be used against her in any way, and that she could stop answering questions at any time she wanted to. Third, leaving the court's statements to Manigault aside, I do not believe this is a proper case for the application of the holding in the Mangam case. That decision cannot be read as carte blanche authority for inferring guilt of a violation of conditions of probation in every case where the probationer remains silent or declines to adduce evidence; rather, Mangam must be read in light of the probation violation charged and the facts adduced in support of that violation. In Mangam, the violation charged was leaving the site of the Pride House Program without authority and, in addition to the report of the program manager that appellant had left the program, the testifying probation officer had personal knowledge of the fact that the probationer was not present on site at a time when he should have been. The trial court "said that he considered respondent's silence a factor weighing against him and revoked probation." 343 So.2d at 600. Upholding the trial court's decision, the supreme court said:
We hold the revocation of probation was proper. When a probationer refuses to discuss his compliance or non-compliance with the terms of his probation concerning his residence, this is a factor the judge may consider in a revocation hearing. It was not error for the judge to infer from Mangam's silence confirmation of Mangam's failure to maintain his residence at the Pride House and thus the violation of condition of his probation.
343 So.2d at 600-01 (emphasis added).
The probation violation in Mangam is vastly different from the charge of violating probation by committing robbery involved in this case. In Mangam there was direct non-hearsay evidence that the probationer had violated his probation by not staying in the Pride House in accordance with instructions. Here, since there was no conviction of the charged offense, the state was obligated to prove each element of robbery at the probation revocation hearing. To require a defendant in such *861 circumstances to come forward and testify as the only means to avoid being saddled with an inference of guilt sufficient to establish a probation violation flies directly in the face of due process requirements. But we need not reach such due process concerns in this case because nothing stated in Mangam permits the court to transpose appellant's silence in this case into an admission of guilt of the robbery charge. For these reasons, therefore, I would reverse the revocation of probation.
After the court announced its decision to revoke probation, counsel for Manigault requested an extension of time to prepare for the sentencing hearing.[2] There was some discussion about the lack of a PSI report and the fact that Manigault was entitled to have a PSI report before being sentenced, which she desired because she had no prior felony convictions. The record contains no notice that the matter of sentencing would be taken up at this time; rather, the whole discussion before the court centered on the fact that apparently the customary practice in Duval County Circuit Court has been to consider sentencing immediately after a decision to revoke probation. I am unable to agree that reliance on such custom and practice is a sufficient substitute for the right to notice of sentencing by the court. I conclude, therefore, that the trial court erred in denying appellant's request for a short delay and proceeding with sentencing based on the matters then before the court and without a PSI.
NOTES
[1] In State v. Mangam, 343 So.2d 599 (Fla. 1977), the Florida Supreme Court stated that:

When a probationer refuses to discuss his compliance or non-compliance with the terms of his probation . .. this is a factor the judge may consider in a revocation hearing.
The Mangam court concluded that the probationer's silence could serve as confirmation of the violation charged. See also, Hudson v. State, 489 So.2d 808 (Fla. 4th DCA 1986).
[1] If there was some other evidence before the court indicating these children were not Lucy Manigault's children, it certainly was not identified at the hearing and is not part of this record on appeal.
[2] Appellant's counsel stated on the record:

THE COURT: Okay, Mr. Morrow, it's my understanding you are objecting to sentencing proceeding now?
MR. MORROW: Yes, Your Honor, I would like the record to reflect that I'm making a formal objection to any sentencing on violation of probation without giving me the opportunity for a sentencing hearing, and without an opportunity, even 24 hours, to investigate her background, to bring forth any witnesses I can call on her behalf to show her character, or what kind of person she is, to show her past, her background, to go into questions about the children. I understand it's her daughter's children, and the drug problems her daughter has been going through, that she's been helping with, and many other mitigating circumstances.
I would make an objection as to that ground. I don't think it would be fair to just run into a sentencing hearing immediately right after violation of probation, and give her state time without affording her that opportunity. (Tr. 25-26.)